FILED

FEB 09 2016

ORDERED PUBLISHED

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   NC-15-1142-JuKuW |
| LUCIO CHAGOLLA; MARIA D. HERNANDEZ MURUETA, | ) ) ) | Bk. No.   08-57523 |
| Debtors. | ) ) | |
| LUCIO CHAGOLLA; MARIA D. HERNANDEZ MURUETA, | ) ) ) ) | |
| Appellants, | ) ) | **O P I N I O N** |
| v. | ) | |
| JP MORGAN CHASE BANK, N.A.,[1] | ) ) | |
| Appellee. | ) ) | |

Argued and Submitted on January 21, 2016
at San Francisco, California

Filed - February 9, 2016

Appeal from the United States Bankruptcy Court
Northern District of California, San Jose Division

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

Appearances:   David Boone for appellants Lucio Chagolla and Maria D. Hernandez Murueta.

Before:   JURY, KURTZ, and WANSLEE, Bankruptcy Judges.

---

[1]   JP Morgan Chase Bank did not participate in this appeal.

JURY, Bankruptcy Judge:

Appellants Lucio Chagolla and Maria D. Hernandez Murueta ("Debtors") appeal the bankruptcy court's order denying their unopposed valuation motion under 11 U.S.C. § 506(a) and (d) and Federal Rule of Bankruptcy Procedure ("FRBP") 3012, seeking to value real property upon which the junior lienholder, JP Morgan Chase Bank, N.A. ("JP Morgan"), is secured.[2] Although the valuation motion was brought after Debtors completed their plan and received a discharge, Debtors assert that the bankruptcy court erred in denying the motion as untimely. We agree with Debtors. In the absence of prejudicial delay, we find that a motion to value and avoid the lien of a junior lienholder may be brought after discharge if the confirmed plan called for its avoidance and treated it as unsecured and if no prejudice to the junior lienholder will occur. Accordingly, for the reasons stated below, we REVERSE the bankruptcy court's order and REMAND the matter to the bankruptcy court for further proceedings consistent with this opinion.

## I.  FACTS

The facts are not in dispute. Debtors owe more money on their home than it is worth. The fair market value of their home on the confirmation date was much less than the amount due on the first mortgage, let alone what is owed on the second. The second mortgage held by JP Morgan is the subject of the

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

1  instant appeal.
2      Debtors filed a petition and Chapter 13 plan on December
3  23, 2008.  Pursuant to the plan, Debtors would pay zero percent
4  to unsecured creditors and would file an adversary proceeding to
5  avoid the junior lien of JP Morgan within ninety days of the
6  commencement of the case.  The plan was confirmed at a hearing
7  on February 19, 2009, with the order entered on March 2, 2009.
8  JP Morgan did not object to its treatment at confirmation.  The
9  confirmation hearing was held prior to the end of the ninety-day
10 period provided in the plan to file the adversary to avoid JP
11 Morgan's lien.  However, no adversary proceeding was ever
12 commenced by Debtors.  On March 12, 2014, after completing all
13 payments required by the plan, Debtors obtained a discharge.
14 The case was closed on April 11, 2014.
15     Nearly a year after the case was closed and six years after
16 the plan was confirmed, Debtors filed a motion to reopen the
17 case for the sole purpose of filing a lien avoidance motion.
18 After the court reopened the case, on February 23, 2015, Debtors
19 filed their lien avoidance motion, which provided:  (1) the fair
20 market value of their home at confirmation was $550,000.00;
21 (2) Countrywide Home Loans Servicing, L.P. holds a senior deed
22 of trust with a principal balance of $628,804.83; and (3) JP
23 Morgan holds a junior lien with a principal balance of
24 $130,686.22.  Relying on the holding of <u>Zimmer v. PSB Lending</u>
25 <u>Corporation(In re Zimmer)</u>, 313 F.3d 1220 (9th Cir. 2002),
26 Debtors argued that based on the property valuation, the wholly
27 unsecured second lien of JP Morgan should be avoided.  Although
28 the motion was properly served, JP Morgan did not file an

opposition or participate in the proceeding.

On April 21, 2015, the bankruptcy court entered an order denying the motion. Although recognizing that there is not a time limitation in the Bankruptcy Code or Rules which would prevent Debtors from bringing their valuation motion after the case was closed, the court held that (1) it lacked jurisdiction to grant the motion, (2) the motion was untimely based on case law the court reviewed, and (3) the motion was not heard in conjunction with the hearing on the plan as required by § 506(a). This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in denying, as being untimely, Debtors' motion to value and avoid a junior lien that was brought after Debtors were discharged and the case was closed.

## IV. STANDARD OF REVIEW

Questions of law are subject to de novo review. United States v. Lang, 149 F.3d 1044, 1046 (9th Cir. 1998). Questions of fact are reviewed under the clearly erroneous standard. Pullman-Standard v. Swint, 456 U.S. 273, 287 (1982).

Based on the undisputed facts, we review the bankruptcy court's conclusions of law de novo. Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995); United States v. Lang, 149 F.3d at 1046.

-4-

## V.  DISCUSSION

The bankruptcy court denied Debtors' valuation motion for the reasons stated above. We will address each in turn.

**A. The bankruptcy court retained jurisdiction over the plan confirmation order**

The bankruptcy court concluded it lacked jurisdiction to grant relief on Debtors' motion. We disagree. Bankruptcy courts have always been empowered to interpret and enforce their own orders, which includes an order confirming a chapter 13 plan.

The jurisdiction of bankruptcy courts, like all federal courts, is created and limited by statute. See Celotex Corp. V. Edwards, 514 U.S. 300, 307 (1995). As such, a bankruptcy court retains jurisdiction over proceedings "'arising under title 11, or arising in or related to cases under title 11.'" Wilshire Courtyard v. California Franchise Tax Board (In re Wilshire Courtyard), 729 F.3d 1279, 1287 (9th Cir. 2013) (quoting 28 U.S.C. § 157(b)(1)).

It is well established that a bankruptcy court retains continuing jurisdiction to interpret and enforce its own orders. See Travelers Indemnity Company v. Bailey, 557 U.S. 137, 151 (2009); see also In re Wilshire Courtyard, 729 F.3d at 1287. "Related to" jurisdiction is not indefinite. Prior to a debtor confirming a plan, a bankruptcy court has broad discretion "related to" almost "every matter directly or indirectly related to the bankruptcy." Sasson v. Sokoloff, 424 F.3d 864, 868 (9th Cir. 2005). However, post-confirmation, the Ninth Circuit has restricted "related to" jurisdiction to matters that are

"closely related," including all "matters 'affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan.'" In re Wilshire Courtyard, 729 F.3d at 1287 (quoting Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 166-67 (3rd Cir. 2004).

Based on Debtors' confirmed plan, which stated the junior lien of JP Morgan would be avoided and treated as unsecured, the bankruptcy court retained jurisdiction over the matter to "implement" or "enforce" the plan confirmation order. See Travelers Indemnity Company, 557 U.S. at 151 ("[i]t is undisputed that [a] bankruptcy court [has] continuing jurisdiction to interpret and enforce its own ...orders"); see also In re Wilshire Courtyard, 729 F.3d at 1287. Furthermore, § 105(a) provides additional authority for the bankruptcy court to implement the plan order. Section 105(a) allows a court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

Therefore, the bankruptcy court had jurisdiction to implement and enforce Debtors' confirmed chapter 13 plan order with respect to treatment of the second lien of JP Morgan.

**B. Debtors' motion was not untimely under § 506(a) or Rule 3012**

Section 506(a) provides for judicial valuation of collateral in order to determine the status of a creditors' claim. See Nobelman v. American Savings Bank, 508 U.S. 324, 328 (1993). The statute "divides claims into 'secured claims' and 'unsecured claims.'" In re Zimmer, 313 F.3d at 1222-23 (quoting 11 U.S.C. § 506(a)). Specifically, § 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent of the value of such creditor's interest...is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

As such, the "thrust of § 506(a) is to classify allowed claims as either secured or unsecured, which in turn affects how the bankruptcy code treats them." Woolsey v. Citibank N.A. (In re Woolsey), 696 F.3d 1266, 1272 (10th Cir. 2013).

Rule 3012 provides the procedure for valuing collateral and is to be read together with § 506(a). It provides:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of secured claim and any other entity as the court may direct.

The bankruptcy court correctly conceded that neither § 506(a) nor Rule 3012 has a time limit for filing a valuation motion. See Collier on Bankruptcy, ¶ 3012.01 (16th ed. 2012) ("The timing of the determination of a particular valuation will vary depending on the purpose for which it is sought."). Furthermore, we are not aware of any reported Ninth Circuit cases which place a time bar on bringing a valuation motion after discharge or after the case is closed. Therefore, the motion was not per se untimely.

In a practical sense, we see little difference between an avoidance motion filed under § 506(a) and one filed under § 522(f) such that only the passage of time, without prejudice to a creditor, bars recovery. Although a lien avoidance under

-7-

§ 522(f)[3] is substantively different, an analogy to the timing of such motion is appropriate. It has been consistently held that there exists no time limit to bring a motion to avoid a lien under § 522(f). Yazzie v. Postal Fin. Co. (In re Yazzie), 24 B.R. 576, 577 (9th Cir. BAP 1982) ("No provisions of the Code or Rules (present or proposed) have established a time limit for bringing an action to avoid a lien under [] § 522(f)."); see also Goswami v. MTC Distributing (In re Goswami), 304 B.R. 386, 392 (9th Cir. BAP 2003); Luna v. California National Bank (In re Luna), 2007 WL 7541003, at *3 (9th Cir. BAP 2007). Rather, the key to whether the bankruptcy court will allow a § 522(f) lien avoidance to be filed after a case is closed is "whether the creditor is sufficiently prejudiced so that i[t] would be inequitable to allow avoidance of the lien." ITT Financial Serv. v. Ricks (In re Ricks), 89 B.R. 73, 75-6 (9th Cir. BAP 1988); see also In re Goswami, 304 B.R. at 392. This argument can be applied equally in a § 506(a) lien avoidance.

Under both statutes, neither the Code nor the Rules establish a time limitation for filing the avoidance motion. Because Congress has not placed any statutory limitations, nor are there any common law doctrines which draw a time bar, we are persuaded that no arbitrary time limitation exists. However, this finding is not without limitation. In order to bring a motion to avoid lien under § 506(a) after a debtor has received a

---

[3] Section 522(f) provides: the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is - (A) a judicial lien . . . .

-8-

discharge or the case is closed, at a minimum, the following must be satisfied: first, the confirmed plan must call for avoiding the wholly unsecured junior lien and treat any claim as unsecured; second, the chapter 13 trustee must treat the claim as unsecured pursuant to the plan; and third, the creditor must not be sufficiently prejudiced so that is would be inequitable to allow avoidance after entry of discharge or the closing of the case.

In this case, the confirmed plan provided that the wholly unsecured junior lien of JP Morgan would be avoided and treated as unsecured. JP Morgan did not object to either its treatment under the plan or to Debtors' valuation motion. The docket reflects that prior to confirmation JP Morgan filed a secured claim based on the second lien. The Trustee's Final Report acknowledges the claim was schedule as secured but asserted as unsecured and shows that it, like all the other unsecured claims, received nothing.[4] Therefore, there is nothing in the record to indicate that JP Morgan has been prejudiced in any way by Debtors' delay in avoiding their lien.[5]

The record indicates Debtors gave JP Morgan adequate notice of both the plan and the subsequent motion. Consistent with the

---

[4] Although neither JP Morgan's proof of claim nor the Trustee's Final Report were included in the record, we may take judicial notice of the underlying bankruptcy court records relating to an appeal. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

[5] The confirmed plan paid 0% to unsecured creditors, so whether JP Morgan did or did not file a claim, its mandatory treatment would have been the same.

-9-

plan, the motion set forth the proposed treatment of JP Morgan's lien, the address of the property, the property value, and that this value was less than the amount owed on the first mortgage. As such, JP Morgan had "adequate notice" of the proceeding, yet chose not to participate. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("[adequate notice is notice that is] reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Furthermore, as noted, the chapter 13 trustee made payments over the life of the plan on the basis that JP Morgan's claim was unsecured. As such, the chapter 13 plan is preclusive as to the treatment of JP Morgan's claim. See Lomas Mortgage USA v. Wiese, 980 F.2d 1279, 1284 (9th Cir. 1993) ("An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing.").

Based on the foregoing, we see no prejudice and therefore no reason why JP Morgan's lien could not be avoided.

### C. Reading of § 506(a)

The bankruptcy court concluded that § 506(a) requires the valuation determination be made in conjunction with a hearing on the plan. It reasoned that because Debtors' motion was not heard at the same time as the confirmation hearing, it was untimely.

We disagree with the court's analysis. Section 506(a) requires that the ". . . value shall be determined . . . in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." The language of

1　§ 506(a) is disjunctive. The hearing could in fact be in
2　conjunction with the disposition **or** use. It is not limited only
3　to the confirmation of the plan. Moreover, in "conjunction" does
4　not necessarily mean "a simultaneous occurrence," but rather
5　could mean "a combination of circumstances." Merriam Webster at
6　244 (10th Ed.). Under this reading, the statute could allow a
7　hearing on the value in "conjunction" with the continued use or
8　disposition of Debtors' property, as was the case here. Since
9　the confirmed plan called for avoiding the junior lien and
10　treating it as unsecured, a valuation hearing at any time could
11　be deemed "in conjunction with" the plan.

12　**D. Bankruptcy court's authority is not persuasive**

13　　The bankruptcy court reached its conclusion by relying on
14　three cases, which we do not find controlling or persuasive.
15　　The bankruptcy court first relied on In re Wilkins, 71 B.R.
16　665 (Bankr. N.D. Ohio 1987), asserting that the Wilkins court
17　denied a valuation motion as untimely when it was filed a mere
18　month after the confirmation of the chapter 13 plan. However, in
19　Wilkins, the confirmed plan provided for 100% payment of the
20　secured claim on a car. Only when the debtors realized that plan
21　would not be feasible did they file their valuation motion, to
22　which the creditor objected. Our case is different simply
23　because the plan called for JP Morgan's treatment as unsecured
24　and it was paid as such. Debtors here did not materially change
25　the creditor's expected treatment under the plan, making Wilkins
26　distinguishable.
27　　Secondly, it relied on McPherson v. Green Tree Servicing,
28　LLC (In re McPherson), 2013 WL 6657599 (D. Colo. December 17,

2013), an unpublished case out of Colorado. The <u>McPherson</u> district court affirmed the bankruptcy court finding that a reasonable interpretation of § 506(a) is that it requires the valuation be made either separate from or during the confirmation hearing and in conjunction with the confirmation of the plan. However, in <u>McPherson</u>, the plan provided that the unsecured status of the creditor would be determined subject to the court's order granting the valuation motion. No hearing was held and no valuation made prior to confirmation, leaving the plan terms uncertain. Here, the plan terms were certain and the later-filed valuation motion was consistent with the terms.

Finally, the court relied on <u>Cal. Dif. Inc., v. Eaton (In re Eaton)</u>, 2006 WL 6810924 (9th Cir. BAP February 28, 2006). The bankruptcy court relied on a footnote in <u>Eaton</u>, which expressed "doubt" that a bankruptcy court can value a secured claim under § 506(a) "in conjunction with any hearing on a plan" when the valuation hearing was years after confirmation.[6] Being unpublished, <u>Eaton</u> is of no precedential value to this Panel and the footnote provided no analysis. Moreover, the plan in <u>Eaton</u> was silent on the treatment of the secured claims, which caused due process concerns not present in the instant case.

---

[6] Footnote 14 provided: "We doubt, but need not decide under these facts, whether the bankruptcy court can, consistent with [506(a),] value a secured claim in conjunction with any hearing on ... a plan affecting such [secured] creditor's interest when that plan was confirmed years before, and the debtors have completed their performance of that plan and received a discharge." <u>In re Eaton</u>, 2006 WL 6810924, at *8 n. 14.

Case: 12-48816    Doc# 59-1    Filed: 09/26/17    Entered: 09/26/17 15:42:47    Page 12 of 13

**E. Despite § 1322(b)(2), the bankruptcy court may remove the wholly unsecured lien of JP Morgan in this case**

In a chapter 13, generally speaking, claims secured by a security interest in a debtor's principal residence may not be modified. See § 1322(b)(2) (providing a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."). However, despite § 1322(b)(2), such a lien may be "stripped off" and avoided under § 506(d) if the bankruptcy court determined under § 506(a) that there is no value in the residence to secure the claim and that the creditor's claim is rendered wholly unsecured. In re Zimmer, 313 F.3d at 1222-23.

As the record indicates, Debtors' valuation motion established that JP Morgan held a wholly unsecured second. Under In re Zimmer, the JP Morgan second may be "stripped off" and avoided under § 506(d). Therefore, we conclude that the trial court erred in denying the lien avoidance sought by Debtors.

## VI. CONCLUSION

For the reasons stated above, we REVERSE the decision of the bankruptcy court and REMAND for further proceedings consistent with the opinion.